IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JOHNNY L. OWENS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:15-CV-12 (CAR) |
| JACK TURNER, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Johnny L. Owens, proceeding *pro se*, brings unreasonable search and seizure, false arrest, and false imprisonment claims pursuant to 42 U.S.C. § 1983 against Defendant Jack Turner.  Plaintiff contends Defendant violated his Fourth and Fourteenth Amendment rights after Defendant stopped, arrested, and then searched Plaintiff's car without probable cause.  Currently before the Court is Defendant's Motion for Summary Judgment [Doc. 22].  After careful consideration, the Court finds Defendant is entitled to qualified immunity in his individual capacity and Eleventh Amendment immunity in his official capacity.  Thus, Defendant's Motion [Doc. 22] is **GRANTED**.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

material fact.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

As a pro se litigant, Plaintiff is held "to a less stringent standard than formal pleadings drafted by lawyers."[8]  Nevertheless, Plaintiff's pro se status "does not exempt [him] from compliance with relevant rules of procedural and substantive law," including those applicable on summary judgment.[9]

## BACKGROUND

This case arises out of a traffic stop, vehicle search, and subsequent arrest of Plaintiff.  The parties' versions of events differ and both sides are pertinent to resolving the instant motion.

On November 20, 2014, at approximately 10:00 am, Defendant Jack Turner, a patrol deputy, stopped Plaintiff Johnny L. Owens in Butts County, Georgia.  Defendant's incident report states he observed Plaintiff pass a tractor trailer in a no passing zone on Highway 16 and then checked the vehicle's speed with his radar unit.  The car was traveling 80 mph in a 55 mph speed limit zone, so Defendant turned on his emergency

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[9] *Hillemann v. Univ. of Cent. Fla.*, 411 F.Supp.2d 1354, 1358–59 (M.D. Fla. 2004), *aff'd*, 167 F. App'x 747 (11th Cir. 2006) (internal quotation marks omitted).

lights to initiate the traffic stop.  However, Defendant was unable to find Plaintiff after traveling for several miles.  Suspecting Plaintiff pulled into a driveway to avoid the stop, Defendant turned around on Highway 16 and headed east again.  Defendant spotted Plaintiff traveling west on Highway 16 and turning onto Higgins Road upon seeing his patrol car.  Defendant claims he was forced to travel at over 100 mph just to catch up with Plaintiff.  Defendant finally stopped Plaintiff at the intersection of Higgins Road and Highway 42.[10]

Once Defendant initiated the traffic stop, he asked Plaintiff where he was going in such a hurry.  Plaintiff told Defendant he had to go to court that day, and, in the course of their conversation, Plaintiff admitted to "trying to dodge" Defendant.[11]  After careful consideration, Defendant decided to charge Plaintiff with speeding, passing in a no-passing zone, and reckless driving, instead of fleeing and attempting to allude.  Defendant then placed Plaintiff under arrest.  Sergeant Wallace transported Plaintiff to the Butts County Jail, while Defendant inventoried and impounded the car.[12]

However, Plaintiff contends he was not speeding at 80 mph or trying to evade police.  Actually, Plaintiff never saw Defendant on Highway 16 and immediately stopped

---

[10] Def.'s Mtn. for Summary Judgment, Ex. 1 Incident Report, [Doc. 22-2] at p. 1.
[11] *Id.*
[12] *Id.*

when he noticed Defendant behind him on Higgins Road.  Plaintiff always uses Higgins Road as a cut through to Pike County and never admitted to Defendant he was "dodging" him.[13]  According to Plaintiff, when Defendant approached Plaintiff's car, his first words to Plaintiff were "how would you like it if I put you in jail?"[14]  Defendant asked Plaintiff how fast he was going to which Plaintiff responded, "about 60 miles per hour."[15]  Defendant told Plaintiff four witnesses called in to report he was driving recklessly and requested Plaintiff's license and registration.[16]

After Plaintiff provided his license and registration, Defendant proceeded to sit in his patrol vehicle for approximately twenty minutes before returning to Plaintiff's car. Once Defendant returned, Plaintiff asked if he was free to leave the scene because he had to appear in Magistrate Court in Pike County, Georgia at 10:30 am.[17]  Defendant responded, "I don't know what I'm going to do yet," and went back to his vehicle for approximately another twenty-five minutes.[18]

---

[13] Pl.'s Response to Mtn. to Dismiss, [Doc. 18] at p. 1.
[14] Pl.'s Amended Complaint, [Doc. 8] at p. 1.
[15] Id.
[16] Id.  Defendant disputes these allegations, contending he witnessed Plaintiff speeding at 80 miles per hour.
[17] Id. at p. 1-2.
[18] Id. at p. 2.

When Defendant returned to Plaintiff's car the second time, he told Plaintiff to get out of his vehicle and put his hands behind his back to be handcuffed.  At some point during this time, another police officer arrived on the scene to assist Defendant.  After Plaintiff was placed in handcuffs, Defendant proceeded to search Plaintiff's car and instructed the other police officer to transport Plaintiff to Butts County Jail.  Plaintiff contends the officers never told him what he did wrong or why he was being arrested.[19]

Plaintiff was taken to Butts County Jail, but he was not provided bond until the next day, which was set at $3,500.00.  It was not until Plaintiff was released and given his tickets that he claims he learned of the traffic violations.[20]  Plaintiff received citations for reckless driving, passing in a no passing zone, and speeding at 80 miles per hour.[21]  On January 13, 2015, Plaintiff timely filed this action, claiming his constitutional rights were violated.

Fifteen days later, on January 28, 2015, a Butts County grand jury indicted and charged Plaintiff with reckless driving, improper passing, speeding, driving too fast for conditions, and obstruction of an officer.  The obstruction of officer charge was subsequently dropped.  Plaintiff pled guilty to driving too fast for conditions and

---

[19] *Id*.
[20] *Id*.
[21] Def.'s Mtn. for Summary Judgment, Ex. 1 Incident Report, [Doc. 22-2] at p. 1.

improper passing in exchange for a *Nolle Prosequi* Order on the reckless driving and speeding charges.[22]

Plaintiff filed this action with a motion to proceed *in forma pauperis*.  After an initial review of the complaint, the Court allowed him to file his unreasonable search and seizure, false arrest, and false imprisonment claims brought pursuant to § 1983.[23]  Now, Defendant moves for summary judgment on all claims, arguing he is entitled to qualified immunity and Eleventh Amendment immunity.

## DISCUSSION

Plaintiff alleges Defendant violated his constitutional rights when Defendant arrested him and searched his car because Defendant lacked probable cause to initiate the stop.  Defendant contends qualified immunity shields him from any § 1983 liability, as he had probable cause to conduct the traffic stop and arrest Plaintiff after he saw Plaintiff speeding and attempting to evade police.  Additionally, Defendant argues, after arresting Plaintiff, it was reasonable for him to inventory Plaintiff's vehicle before impounding it.

---

[22] *See* Def.'s Brief in Support of the Mtn. for Summary Judgment, [Doc. 22-1] at p. 1; Def.'s Mtn. for Summary Judgment, Ex. 2 Accusation [Doc. 22-3] at p. 1-2; Def.'s Mtn. for Summary Judgment, Ex. 3 *Nolle Prosequi* Order, [Doc. 22-4] at p. 1; Def.'s Mtn. for Summary Judgment, Ex. 4 Dec. of James Moss, [Doc. 22-5] at para. 4.

[23] [Doc. 5].

Defendant also contends Eleventh Amendment immunity shields him from any claim against him in his official capacity.

## I. Qualified Immunity

"[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."[24] As the Supreme Court recently reiterated, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[25] "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."[26] Qualified immunity is immunity from suit and should be resolved as early as possible in the case.[27]

When an officer invokes qualified immunity, the initial burden is on the officer to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[28]  Once the officer satisfies that burden, the burden

---

[24] *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal quotation marks omitted).
[25] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam).
[26] *Lee*, 284 F.3d at 1194.
[27] *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).
[28] *Lee*, 284 F.3d at 1194.

8

then shifts to the plaintiff to show (1) a violation of a constitutional right occurred, and (2) that right was "clearly established" at the time of the violation.[29]

Here, it is clear Defendant was acting within the scope of his discretionary authority.  Therefore, the burden shifts to Plaintiff to prove the traffic stop, arrest, and vehicle search violated his clearly established Fourth and Fourteenth Amendment rights.

### A. False Arrest and False Imprisonment

Plaintiff alleges Defendant falsely arrested and imprisoned him in violation of his Fourth Amendment rights.[30]  Plaintiff contends Defendant stopped him for no reason, required him to wait in his car for forty-five minutes, and arrested him without explaining why.  However, Defendant contends he had probable cause to initiate the traffic stop and arrest Plaintiff because he was speeding at 80 mph, and he admitted to trying to evade Defendant.

---

[29] *Pearson*, 555 U.S. at 232.

[30] Normally, when a false imprisonment claim arises merely from "[a] detention on the basis of a false arrest," the false imprisonment claim is "subsume[d]" into the false arrest claim.  *Eloy v. Guillot*, 289 F. App'x 339, 347 n.3 (11th Cir. 2008) (citing *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (concluding that plaintiff's claim for false imprisonment is functionally indistinct from his false arrest claim)).  Here, Plaintiff's false imprisonment claim will subsume with his false arrest claim, and the Court will refer only to the latter.

Pursuant to the Fourth Amendment, a police officer must have probable cause to make a warrantless arrest.[31] "An arrest without probable cause would violate Plaintiff's Fourth Amendment right to be free from an unreasonable search."[32]  For purposes of qualified immunity, the Defendant need only have arguable probable cause to arrest Plaintiff.[33]  Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest."[34]  Furthermore, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."[35]  "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern."[36]

[31] *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

[32] *See Ortega*, 85 F.3d at 1525.

[33] *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) ("Significantly, all that is required for qualified immunity to be applicable to an arresting officer is 'arguable probable cause to believe that a person is committing a particular public offense ….'" (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998))).

[34] *Lee*, 284 F.3d at 1195 (internal citation and quotation marks omitted).

[35] *Id*. at 1194-95 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

[36] *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137-38 (11th Cir. 2007) (internal citation omitted).

Here, Defendant contends multiple violations justified the stop, arrest, and ticket, including Plaintiff's speeding at 80 miles per hour, passing in a no-passing zone, and driving recklessly.  Defendant's incident report also states Plaintiff admitted to fleeing and attempting to elude a police officer, but Defendant decided not to ticket him for that offense.[37]  Ultimately, Plaintiff was charged and indicted for five offenses.[38]  Plaintiff pled guilty to improper passing and driving too fast for conditions, in violation of O.C.G.A. §§ 40-6-46 and 40-6-180, in exchange for a *Nolle Prosequi* Order on the remaining charges.[39]

By pleading guilty to the alleged traffic violations, Plaintiff confirmed Defendant had probable cause to conduct the traffic stop for said violations and arrest Plaintiff.[40] Because "probable cause constitutes an absolute bar to … § 1983 claims alleging false arrest,"[41] the Court finds Defendant is entitled to qualified immunity on these claims. Accordingly, Defendant is entitled to summary judgment as to these claims.

### B.  Unreasonable Search and Seizure

[37] Def.'s Mtn. for Summary Judgment, Ex. 1 Incident Report, [Doc. 22-2] at p. 1 (according to Defendant, Plaintiff admitted to trying to "dodge" Defendant).

[38] Def.'s Mtn. for Summary Judgment, Ex. 2 Accusation, [Doc. 22-3] at p. 1-2.

[39] Def.'s Mtn. for Summary Judgment, Ex. 5 Final Disposition, [Doc. 22-6] at p. 1. Plaintiff pled *nolle prosequi* to reckless driving and speeding. *Id.* The obstruction of an officer charge was dropped.

[40] *See, e.g., Hall v. Smith*, 170 F. App'x 105, 107 (11th Cir. 2006) (per curiam) ("Moreover, the judicially-recognized fact that [the plaintiff] subsequently pled no contest and was adjudged guilty demonstrates his detention was not unreasonable or unlawful."); *Moody v. City of Albany*, No. 1:03-CV-75, 2006 WL 2263977, at *9-10 (M.D. Ga. Aug. 8, 2006).

[41] *Hall*, 170 F. App'x at 106 (quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)) (internal quotation marks omitted).

Plaintiff also alleges Defendant violated his constitutional rights by searching his vehicle after arresting him without probable cause.  According to Plaintiff, Defendant placed handcuffs on him and then immediately began searching his car, while the other officer placed him in the vehicle and transported him to jail.  Defendant was still searching his vehicle as he left the scene.  Defendant counters he was simply doing an inventory of the vehicle prior to impoundment.

The Fourth Amendment assures "the right of persons to be secure in their persons, houses, papers, and effects from unreasonable searches and seizures."[42]  Generally, the Fourth Amendment requires officers to secure a warrant before conducting a search.[43] However, one exception to this rule is inventory searches of impounded vehicles.[44]  In evaluating inventory searches, "[e]ven if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity."[45]  Once the vehicle is

---

[42] U.S. CONST. amend. IV.
[43] *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999).
[44] *South Dakota v. Opperman*, 428 U.S. 364, 369-76 (1976).
[45] *Sammons v. Taylor*, 967 F.2d 1533, 1542 (11th Cir. 1992) (internal quotation omitted).

lawfully impounded, the officer may conduct an inventory search of the vehicle.[46]  Such

an inventory search does not offend Fourth Amendment principles so long as it is

performed pursuant to standard police procedure.[47]

Here, Defendant states he placed Plaintiff under arrest, and then did an inventory

of Plaintiff's car before having it impounded.[48]  Defendant argues the inventory did not

violate Plaintiff's Fourth Amendment rights because it was a routine search prior to

impoundment and was clearly reasonable.  As stated above, Defendant had probable

cause to arrest Plaintiff, and therefore could impound Plaintiff's car pursuant to police

procedure.  Plaintiff has not presented any evidence that the impoundment and

inventory search were not performed according to standard procedure in these

circumstances, nor does Plaintiff argue the search was conducted for illegal investigatory

purposes or suspicion of evidence of criminal activity.[49]  Additionally, the Court has not

found any authority stating an inventory prior to impoundment is *per se* a constitutional

---

[46] *Id.*

[47] *Id.*

[48] *See* Def.'s Mtn. for Summary Judgment, Ex. 1 Incident Report, [Doc. 22-2] at p. 1.

[49] *See United States v. Skinner*, 857 F. Supp. 228, 232 (11th Cir. 1997) ("The inventory search in this case is invalid because the car was not impounded according to standardized criteria and the facts of this case suggest an investigatory motive."); *Brandon v. Moore*, No. 11-CV-0178-CVE-TLW, 2012 WL 569163, at *8 n. 7 (N.D. Okl. Feb. 21, 2012) (finding the inventory prior to impoundment did not violate the Fourth Amendment as Defendant stated he did the search to get a list of valuable things in the car, and Plaintiff did not present evidence the search was not done according to standard procedure or conducted for any other purpose (citing *Opperman*, 428 U.S. at 369)).

violation. Instead, many courts have found inventories prior to impoundment are common practice and do not violate the Fourth Amendment.[50] Based on the foregoing, Plaintiff has failed to show the inventory search prior violated his constitutional rights.

Therefore, the Court finds Defendant is entitled to qualified immunity regarding Plaintiff's unreasonable search and seizure claim. Defendant is entitled to summary judgment as to this claim.

## II. Eleventh Amendment Immunity

To the extent Plaintiff brings claims against Defendant in his official capacity as a patrol deputy for the Butts County Sheriff's Department, Defendant is entitled to Eleventh Amendment immunity. The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued."[51] "To

---

[50] *See, e.g.*, *Kilgore v. City of Stroud*, 158 F. App'x 944, 950 (10th Cir. 2005) (concluding it was common police practice to do an inventory search prior to impounding the car, and such practice does not violate the Fourth Amendment); *Palmer v. Allen*, No. 14-cv-12247, 2016 WL 3405782, at *5 (E.D. Mich. June 21, 2016) ("Since [the driver] had already been arrested for driving on a suspended license and having multiple outstanding warrants, it was lawful for [Defendant] to order [Plaintiff] out of the vehicle to conduct an inventory search of [the driver's] vehicle prior to impoundment." (citing *United States v. Bah*, 794 F.3d 617, 627 (6th Cir. 2015), *cert. denied sub nom.*, *Harvey v. United States*, 136 S. Ct. 561 (2015))); *Kirk v. Muskingum Cnty. Ohio*, No. 2:09-cv-00583, 2011 WL 1480136, at *7 (S.D. Ohio, Eastern Div. April 19, 2011) ("The Court therefore permits a search of a vehicle for inventory 'prior to impoundment, even if the police have no probable cause to otherwise search the vehicle.'" (quoting *United States v. Campbell*, 486 F.3d 949, 958 (6th Cir. 2007) (citing *Opperman*, 428 U.S. at 375))); *Golden v. Austin Cnty. Sheriffs Dep't*, No. H-09-817, 2010 WL 3909476, at *9 (S.D. Texas Sept .30, 2012) ("After a lawful arrest, law enforcement may perform an inventory search before impounding a vehicle." (citing *United States v. Foots*, 340 F. App'x 969, 971 (5th Cir. 2009))).

[51] *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir.2003) (en banc), *cert. denied*, 540 U.S. 1107 (2004).

receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State."[52]  "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."[53]

"A Georgia sheriff is considered an 'arm of the State' when performing law enforcement functions, such as detaining and arresting suspects."[54]   Additionally, sheriff's deputies are entitled to the same Eleventh Amendment immunity against official capacity claims as a sheriff.[55]   Here, Defendant was performing his law enforcement duties as the Sheriff's deputy when he arrested Plaintiff after a traffic stop and performed

---

[52] *Id.*

[53] *Id.*

[54] *Richardson v. Quitman Cnty., Ga*, 912 F.Supp.2d 1354, 1366 (M.D. Ga. 2012) (citing *Burgest v. Colquitt Cnty.*, 177 F. App'x 852, 855 (11th Cir. 2005) (per curiam) (affirming summary judgment in favor of the sheriff and his employees sued in their official capacities on claims related to the plaintiffs' detention and arrest based on Eleventh Amendment immunity)); *see also Manders*, 338 F.3d at 1312-13, 1328-29 (noting the sheriff's function is not limited to creating jail policies, but also includes law enforcement, state courts, and corrections).

[55] *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) ('[W]e hold that the sheriff's [E]leventh [A]mendment immunity also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego."); *Howell v. Houston Cnty., Ga.*, No. 5:09-CV-402(CAR), 2011 WL 3813291, at *28 (M.D. Ga. Aug. 26, 2011) (concluding deputies are entitled to the same Eleventh Amendment immunity as sheriffs because, under Georgia law, sheriff's deputies are employees of the sheriff (citing *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1342 n. 32 (11th Cir. 2003) (en banc))); *Morgan v. Fulton Cnty. Sheriff's Dep't*, No. 1:05–CV–1576, 2007 WL 1810217, at *5 (N.D. Ga. June 21, 2007) ("[W]hen a sheriff is acting as an arm of the state, his deputies are also entitled to Eleventh Amendment immunity from suits for money damages in their official capacities.").

a routine inventory of Plaintiff's vehicle.  Thus, Defendant was acting as an "arm of the State" and is entitled to Eleventh Amendment immunity for all claims against him in his official capacity.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment [Doc. 22] is **GRANTED**.

**SO ORDERED,** this 21st day of September, 2016.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT